Flick v. Murdock.

No. 26,184.

JOHN A. FLICK et al., *Appellants*, v. FRED MURDOCK, *Appellee.*

SYLLABUS BY THE COURT.

1. WILLS—*Oral Agreement to Make Will—Proof of Existence—Admissibility of Evidence.* A written memorandum containing the following language: "I to make will at once to Fred," undated and unsigned, but in the handwriting of one who, it is contended, orally agreed to make a will as indicated in the memorandum, may be introduced in evidence to show that such an agreement had been made.

2. SAME—*Existence—Admissibility of Evidence—Circumstances Affecting Property Involved.* To prove that an oral contract had been made between a husband and his wife by which she agreed to will certain property to his son, it is competent to show that the property had been accumulated in the name of the husband with the financial assistance of the son.

3. SAME—*Acceptance of Provisions—Estoppel to Claim Oral Contract.* By accepting the provisions of a will, a devisee is not estopped from claiming that an oral contract had been made between the testator and his wife by which she agreed to will the property devised to her by the testator to the person claiming under the contract.

4. SAME—*Oral Agreement to Make Will—Findings—Sufficiency of Evidence.* There was evidence sufficient to support the finding that an oral contract had been made between a testator and his wife by which she agreed to make immediately a will giving the devised property to a son of the testator.

Appeal from Pottawatomie district court; MARTIN A. BENDER, judge. Opinion filed November 7, 1925. Affirmed.

*R. P. Evans, George Clammer,* both of Manhattan, *J. V. Humphrey* and *A. S. Humphrey,* both of Junction City, for the appellants.

*A. E. Crane,* of Topeka, and *C. B. Daughters,* of Manhattan, for the appellee.

The opinion of the court was delivered by

MARSHALL, J.: The plaintiffs commenced this action to recover from the defendant an undivided one-half of 1,320 acres of land situated in Pottawatomie county and to set aside a quitclaim deed made by Jackson Flick conveying the land to the defendant. Judgment was rendered in favor of the defendant, and the plaintiffs appeal.

Welcome Murdock died in July, 1906, leaving as his only heirs at

1, 2. Wills, 40 Cyc. p. 1072; 2 A. L. R. 1193; 33 A. L. R. 739; 28 R. C. L. 64.
3. Id., 40 Cyc. p. 1068.   4. Id., 40 Cyc. 1072.

law his widow, Mary A. Murdock, and a son, Fred L. Murdock, the defendant. At the time of his death the title to the land was in his name. By will he devised an undivided one-half interest in the land to Mary A. Murdock, and also made other bequests to her which are immaterial at the present time. Specific real property was devised to Fred L. Murdock, who was made residuary devisee and legatee under the will. Mary A. Murdock died after the death of Welcome Murdock, leaving as her only heir her father, Jackson Flick, who lived at Keyser, in West Virginia. After her death Fred L. Murdock, and C. B. Daughters, his attorney, went to the home of Jackson Flick in West Virginia and procured from him a quitclaim deed conveying the land to the defendant, Fred L. Murdock. Subsequent to that time Sam Kimble, an attorney representing the plaintiffs, went to Jackson Flick and obtained from him a quitclaim deed conveying the land to the plaintiffs.

The petition alleged that the deed from Jackson Flick to the defendant had been procured by fraud, in that C. B. Daughters and Fred L. Murdock had represented to Jackson Flick that—

"The said Jackson Flick was not the owner of any interest in said land, and that his daughter, Mary A. Murdock, then deceased, from whom he claimed to inherit an undivided one-half interest in said land, was not at the time of her death the owner of any interest in said land, but that defendant was the owner of said land and the whole interest therein; that defendant desired a deed from the said Jackson Flick for an undivided interest in said land only for the purpose of making the record title of defendant to said land clear; that defendant had plenty of proof to show his said ownership and that a court would give him the title thereto if the said Jackson Flick did not; and defendant further then and there threatened the said Jackson Flick that unless he (the said Flick) complied with the defendant's demand to execute said deed, defendant would commence court proceedings against the said Jackson Flick and procure from the court the deed or title for said undivided one-half interest in said lands claimed by the said Flick."

The petition further alleged that those representations were false and fraudulent and that Jackson Flick was then a man about eighty years old, in feeble health, and had just arisen from a sick bed to meet the defendant and his attorney.

The defendant contended that no false representations had been made; that he was then the equitable owner of the land; and that an oral agreement had been made between his father, Welcome Murdock, and his stepmother, Mary A. Murdock, that she would, immediately on the execution of the will by Welcome Murdock, execute her will, devising the real property in controversy to the defendant.

The controversy at the trial revolved around the existence of such a contract.

The case was tried to a jury, which answered special questions as follows:

"Q. Did Mary A. Murdock and Welcome Murdock orally agree that Mary A. Murdock should execute a will devising to Fred L. Murdock the real property the subject of this litigation, at or before the will of Welcome Murdock was executed? A. Yes.

"Q. Did Fred L. Murdock and C. B. Daughters, or either of them, make any false and fraudulent representations to Jackson Flick to induce him to execute the deed to Fred L. Murdock, dated April 1, 1919? A. No.

"Q. Did Fred L. Murdock and C. B. Daughters state to Jackson Flick, at and just before the deed complained of was executed in good faith, that Fred L. Murdock claimed the land in litigation by reason of an agreement orally entered into between Mary A. Murdock and Welcome Murdock, that she was to give the land by will to Fred at her death? A. Yes.

"Q. Did you find from the evidence that on the occasion when Jackson Flick made a quitclaim deed to the defendant for an interest in the land involved in this controversy the defendant, Fred L. Murdock, or his attorney, represented to Jackson Flick in substance that the land went back to the defendant on the death of Mary A. Murdock and that the defendant was then the owner thereof, which fact of ownership the defendant had plenty of proof and that unless Jackson Flick made such deed defendant would bring court proceedings for the purpose of procuring from the court a deed and title to the land? A. Only on the strength of the agreement mentioned in question 4.

"Q. Was any consideration given by the defendant to Jackson Flick for the deed executed by him to the defendant and the land in controversy in this case? A. We fail to find in the evidence that there was."

The court adopted the findings of the jury and made other findings as follows:

"2. The court further finds that the deed executed on the 1st day of April, 1919, by Jackson Flick to the defendant, Fred L. Murdock, and recorded in book 55 at page 393, was a good and valid deed and freely and fairly entered into and conveyed all the title of Jackson Flick to the defendant, Fred L. Murdock, to the land described therein, the said Jackson Flick at the time recognizing that he had no interest in said land and said deed was made for the purpose of perfecting the title to said described land in said Fred L. Murdock.

"3. That the deed dated June 2, 1919, executed by the said Jackson Flick and delivered to the plaintiffs, said deed being recorded in book 55 at page 399, conveyed no title to the plaintiffs and should be canceled of record.

"4. The court further finds for the defendant, Fred L. Murdock, and against each and all of the plaintiffs on the issues presented in the first and second causes of action of the second amended and supplemental petition filed by plaintiffs."

Flick v. Murdock.

As conclusions of law the court found:

"1. The defendant, Fred L. Murdock, should be adjudged to be the owner of all the real estate described in the amended petition filed herein free and clear of all claim of the plaintiffs thereto.

"2. The deed made by the said Jackson Flick mentioned in finding number three should be canceled, set aside and held for naught as against the defendant, Fred L. Murdock.

"3. The defendant, Fred L. Murdock, is entitled to recover his costs herein."

Several witnesses testified that Mary A. Murdock, after the death of Welcome Murdock, had stated that the land belonged to the defendant. There was evidence which tended to show that she did not dissent from a statement made by her husband to his physician during his last sickness in the presence of Mary A. Murdock, who was standing at the foot of the bed, in which statement Welcome Murdock said, "I made my will to-day" and "Mollie has promised to make hers at once in favor of Fred." There was evidence which tended to show that Jackson Flick, previous to the visit to him by the defendant and C. B. Daughters, had been informed of the contract between Welcome Murdock and his wife, Mary A. Murdock. Among the effects of Mary A. Murdock was found a written instrument, undated, and unsigned, which contained the following language:

"Prop floor from cellar. Minister Thurston. Masons if liked. Not embalmed for four or five hours after death. Grave faced with brick, thirty or forty feet west of other grave or wall so as to make room for another.

"I shall request that give Lizzie twenty-five dollars for work during winter.

"Two-fifths grain from ranch last year.

"Thirty-two and one-half to Nelson, to be allowed Nelson for cattle, had sixty-five head last year.

"I to have this house on cor. fifth and Yuma three years and money from estate for my support at least $2.50 a year till estate is settled. I am to have furniture in house at the end of three years.

"An money to the amount (or value) $10,000.

"Bank stock for Fred in B. D.

"Have the hall cut off and a wooden step put in; house papered.

"I to make will at once to Fred.

"I to have ranch and life insurance.

"First to appoint Ollie Barner administrator.

"Before making any claims would like a monument; buy from Michigan.

"Has $35,000 Fred's money.

"Fred ——."

The manner in which the property was acquired by Welcome Murdock was shown. It appeared that Welcome Murdock and his

then wife and son, the defendant, Fred L. Murdock, came to Manhattan in about 1888; that the father engaged in a furniture business and the son in the practice of dentistry; that moneys received by them were kept in a common bank account on which each checked; that each assisted the other in carrying on his business whenever requested; that the mother died; that for some years after the father and son lived together, part of the time having a housekeeper and keeping house, and at other times staying at a hotel; and that afterward the father married Mary A. Murdock and lived with her about two years when he died.

1. The competency of the written instrument is seriously questioned because it is not signed and does not purport to have been assented to by Mary A. Murdock, and it is contended that the will of Welcome Murdock did not conform to the terms of the instrument. The statement in the instrument, "I to make will at once to Fred," in the handwriting of Mary A. Murdock, was an admission by her and corroborated the evidence of those witnesses who testified that she had said that the property belonged to the defendant. It was not a contract, but it tended to prove that a contract had been made, and it was not error to receive it in evidence.

2. The evidence to show the manner in which the property was accumulated and the business relations between Welcome Murdock and the defendant was objected to. That evidence was admissible for the purpose of showing that such a contract as is contended for by the defendant was reasonable and proper, and for the reason that it corroborated the testimony that Mary A. Murdock had stated that the property belonged to the defendant.

3. The plaintiffs argue that the defendant is estopped from questioning the right of the plaintiffs to this property because he accepted the property devised and bequeathed to him by the will of Welcome Murdock. He did accept that property. That acceptance would preclude him from contesting the validity of the will, but he is not contesting its validity. He claims that the will devised and bequeathed certain property to Mary A. Murdock, but that the contract obligated her to will the property to him. That contention is not inconsistent with the will and does not create an estoppel.

4. It is contended that the evidence was not sufficient to show the existence of a contract between Welcome Murdock and Mary A. Murdock. There was ample evidence to support the finding that there was such a contract.

The judgment is affirmed.